IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VALERIY STARODUBTSEV,           )
IRINA STARODUBTSEVA, and        )
TAMARA STARODUBTSEVA,           )
                                )
          Plaintiffs,            )   Civil No.  06-06178-TC
                                )
     v.                          )
                                )
ALBERTO R. GONZALES, U.S.       )
Attorney General; MICHAEL       )
CHERTOFF, Secretary, Dept. of   )
Homeland Security; EDUARDO      )   FINDINGS AND RECOMMENDATION
AGUIRRE, Director, U.S.         )
Citizenship and Immigration     )
Services; GERARD HEINAUER,      )
Acting Director, Nebraska       )
Service Center;                 )
                                )
          Defendants.            )
_____)

COFFIN, Magistrate Judge.

   Presently before the court is defendants' motion (#12) to dismiss the case as moot. For the reasons that follow, defendants' motion should be granted and the case should be dismissed with prejudice.

## Background

1 - FINDINGS AND RECOMMENDATION

Plaintiffs are a family of Russian citizens who reside lawfully in the United States. Plaintiffs sought to become permanent residents and pursued the eligibility requirements to achieve Lawful Permanent Resident Alien status. On September 20, 2001, each submitted the Application to Register Permanent Residence or to Adjust Status, Immigration Form I-485, to the Nebraska Service Center of the United States Citizenship and Immigration Service (CIS). Officials acted on their applications in various ways over the course of the following four years, and plaintiffs complied with a number requests for further information and fingerprinting.

The process was stalled, however, due to a delay in accomplishing the required FBI security checks. After learning that the security checks had been pending on March 12, 2004, plaintiffs solicited the assistance of their United States senator in monitoring the status of the security checks over the following two years. Plaintiffs were told that the FBI attributed the delay to a backlog of requests resulting from security procedures instituted after September 11, 2001.

Concerned that CIS might be neglecting to adjudicate their applications, plaintiffs brought this action on July 31, 2006, requesting the court to "[o]rder Defendants to adjudicate Plaintiffs' applications for adjustment of status (Form I-485)." Plaintiffs' Supplemental Pleadings (First) at 11.

2 - FINDINGS AND RECOMMENDATION

Shortly after, on September 29, 2006, CIS granted plaintiff Irina Starodubtseva's application for permanent resident status. On October 2, 2006, CIS did the same for plaintiffs Valeriy Starodubtsev and Tamara Starodubtseva.

Defendants now move the court to dismiss the case as moot because plaintiffs' applications have been adjudicated, and therefore their alleged injury can no longer be redressed by the court.

## Analysis

Federal courts are confined to adjudicating actual "cases" and "controversies." U.S. Const. Article III, Section 2. When an action has "lost its character as a present, live controversy," Am. Rivers v. Nat'l Marine Fisheries Serv., 126 F.3d 1118, 1123 (9th Cir. 1997), the court's authority to consider it under Article III expires. Therefore, courts lack jurisdiction to consider "moot questions . . . or to declare principles or rules of law which cannot affect the matter in issue in the case before it." Church of Scientology of Cal. v. United States, 506 U.S. 9, 12, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992) (quoting Mills v. Green, 159 U.S. 651, 653, 16 S.Ct. 132, 40 L.Ed. 293 (1895)).

The party asserting mootness (in this case, defendant) "bears the burden of establishing that there is no effective relief remaining that the court can provide." S. Or. Barter Fair v. Jackson County, 372 F.3d 1128, 1134 (9th Cir. 2004), cert. denied,

3 - FINDINGS AND RECOMMENDATION

126 S.Ct. 367 (2005). Here, defendants recite plaintiffs' requested relief (i.e., an order directing CIS to take action on the applications), and document that CIS has done what plaintiffs have asked the court to order it to do. Thus, defendants assert that if it were possible for the court to consider plaintiffs' case, the relief that plaintiff has requested would have no practical effect. Indeed, now that plaintiffs' applications have been adjudicated completely, any order of the court requiring CIS to process their applications would not constitute "relief" at all.

Plaintiffs contend that the court may nonetheless consider the matter because the asserted mootness is attributable to defendants' voluntary cessation of the challenged conduct. According to plaintiffs, the "voluntary cessation doctrine" permits the court to take jurisdiction over this matter in order to protect plaintiffs from any future recurrence of defendants' conduct.

The voluntary cessation doctrine applies "generally in cases in which a type of judgment with continuing force, such as an injunction, is sought." Armster v. U.S. District Court for the Central District of California, 806 F.2d 1347, 1357 (9th Cir. 1987). Under the doctrine, a claim to enjoin a defendant against continuing illegal actions does "not become moot 'merely because the [defendant's] conduct immediately complained of has terminated, if there is a possibility of a recurrence which would be within the terms of a proper decree.'" Id. (quoting P. Bator, P. Mishkin, D.

4 - FINDINGS AND RECOMMENDATION

Shapiro, & H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System 110 (2d ed. 1973)). Proper application of the doctrine permits a court to provide continuing relief against a defendant's renewal of the challenged conduct.

When there is a strong possibility that the defendant will reinstate the challenged conduct after the case is dismissed, the court is more likely to issue an order granting ongoing relief. See City of Mesquite v. Aladdin's Castle, Inc., 455 U.S. 283, 289 and n. 10, 102 S.Ct. 1070, 1074 and n. 10, 71 L.Ed.2d 152 (1982) (void-for-vagueness challenge to city ordinance was not mooted by the repeal of challenged language where city had expressly announced its intention to reenact challenged term if the case was dismissed as moot). However, where "(1) subsequent events [have] made it absolutely clear that the allegedly wrongful behavior [cannot] reasonably be expected to recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation," the defendant's voluntary cessation will not revive a mooted claim. Norman-Bloodsaw v. Lawrence Berkeley Lab., 135 F.3d 1260, 1274 (9th Cir. 1998) (internal citation omitted).

The application of the voluntary cessation doctrine to this case is forced at best. First, plaintiffs did not seek an order for continuing relief against defendants' action. Rather, they requested a discrete, one-time order akin to a mandatory injunction

5 - FINDINGS AND RECOMMENDATION

requiring defendants to take specific action on their applications. Nor did they ask to court to protect them against affirmative conduct inflicted by defendants. The relief requested was designed to remedy defendants' alleged nonfeasance, that is their asserted failure to adjudicate plaintiffs' applications.[1] Thus, now that plaintiffs' applications have been adjudicated, the harm that plaintiffs have asked the court to remedy--defendants' failure to complete the adjudication of their Form I-485s--will never again exist for plaintiffs. There is no risk that defendants will reoffend plaintiffs insofar as the administrative task at issue is concerned. See Armster, 806 F.2d at 1359, n.16 ("where the defendant is required to cease conduct permanently, it is apparent that there is no likelihood of recurrence").

Plaintiffs contend that the voluntary cessation doctrine should nonetheless apply because defendants might revoke their recently granted permanent resident status and then allow any applications that they might submit in the future to linger prior to adjudication. This highly contingent argument contemplates an entirely new injury; in doing so, it disregards the purpose of the

---

[1] Although it may be true that defendants completed the adjudications only after the complaint in this action was filed, plaintiffs' own pleadings indicate that the CIS did not fail to adjudicate the applications altogether; it took action on their applications in a number of respects, such as issuing fingerprint requests, evidence requests, and submitting their profiles for security checking. Plaintiffs' Supplemental Pleadings (First) at 5-8.

6 - FINDINGS AND RECOMMENDATION

voluntary cessation doctrine, which is to protect against a defendant's resumption of the particular challenged conduct that prompted the plaintiff to seek the court's intervention. See id. at 1357 (voluntary cessation can revive a mooted claim where "there is a possibility of a recurrence which would be within the terms of a proper decree"). Furthermore, plaintiffs' argument invites ripeness concerns: no such revocation or delay has occurred, and the remote possibility that plaintiffs might be injured later does not present a ripe controversy for this court's consideration.

Finally, even if the voluntary cessation doctrine could find an application on these facts, it is clear that defendants' allegedly wrongful behavior--the failure to adjudicate plaintiff's Form I-485 applications--will not recur now that CIS has disposed of those applications. Moreover, the action that CIS took has eradicated the effects of the asserted misconduct, inasmuch as plaintiffs are now free to enjoy their permanent resident status and pursue naturalization.

## Conclusion

Defendants' motion to dismiss with prejudice (#12) should be granted.

DATED this 5t day of December, 2006.

　　　　　　　　　　　　　　　　／s／ Thomas M. Coffin
　　　　　　　　　　　　　　　　THOMAS M. COFFIN
　　　　　　　　　　　　　　　　United States Magistrate Judge

7 - FINDINGS AND RECOMMENDATION